UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GOLDENEYE ADVISORS, LLC,

                Plaintiff,

  -v-

HANACO VENTURE CAPITAL, LTD., et al.,

                Defendants.

24-CV-9918 (VSB) (VF)

**OPINION & ORDER**

---

**VALERIE FIGUEREDO, United States Magistrate Judge.**

Presently before the Court is a motion by Defendants Hanaco Venture Capital, Ltd. ("Hanaco"), Lior Prosor, and David Frankel (collectively, "Defendants") and interventor STL Namos LP ("STL Namos") to compel arbitration and stay this case pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA"). ECF No. 25. Plaintiff Goldeneye Advisors, LLC opposes the motion to compel arbitration. ECF No. 35. For the following reasons, the motion to compel arbitration is **GRANTED**.

## BACKGROUND

The Court presumes the reader's familiarity with the factual background underlying this action, which is detailed in the Court's order granting STL Namos' motion to intervene. See ECF No. 42 at 1-2. As is relevant here, the Limited Partnership Agreement (the "Partnership Agreement") entered into by STL Namos and Plaintiff includes an arbitration clause which states:

> If any dispute arising out of or in connection with this Agreement or any Limited Partner's Subscription Agreement is not amicably resolved between the parties, any party may elect to require that the dispute be submitted to Arbitration (as defined herein) as provided below by delivering a written notice (the "Arbitration Demand Notice") to the other party of its demand for Arbitration. In such event

> the parties shall mutually discuss the identity of the arbitrator who shall be a retired Supreme Court or Regional Court judge with experience in the dispute at hand (the "Arbitrator"). To the extent that the parties do not agree with respect to the identity of the Arbitrator, then the Arbitrator will be selected by the Chairman of the Israeli Bar. The Arbitrator shall serve under the Israeli Arbitration Law, 1968 to resolve the dispute (the "Arbitration").

ECF No. 27-1 at 41-42.[1] The Partnership Agreement also states that it "shall be governed by and construed in accordance with the internal laws of the State of Delaware." Id. at 39. The Subscription Agreement, which confirmed Plaintiff's $1 million investment with STL Namos reiterates that the partnership between STL Namos and Plaintiff is governed by the Partnership Agreement, which contains the arbitration clause. ECF No. 27-2 at 5, 18, 26.

On March 11, 2024, Plaintiff delivered an arbitration demand to Hanaco, and that arbitration in Israel, which is ongoing, includes STL Namos. See ECF No. 23-3 at 3; ECF No. 35 at 10; ECF No. 26 at 9. At issue in the Israeli arbitration are six claims: (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5; (2) fraudulent misrepresentation; (3) gross negligence; (4) negligent misrepresentation; (5) breach of fiduciary duty; and (6) breach of contract. ECF No. 27-3 at 45-51.

On December 24, 2024, Plaintiff commenced this action against Defendants asserting a claim for violation of Section 10(b) of the Securities Exchange Act on 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, and state-law claims for fraudulent misrepresentation and negligence. ECF No. 1 at ¶¶ 68-91. On January 29, 2025, Defendants and STL Namos served an arbitration demand notice on Plaintiff. ECF No. 23 at ¶ 5; ECF No. 27-4.

On January 31, 2025, STL Namos filed a motion to intervene under Rule 24 of the Federal Rules of Civil Procedure for the limited purpose of compelling arbitration. ECF Nos. 21-

---

[1] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the ECF-generated pagination in those documents.

22. On January 31, 2025, Defendants and STL Namos filed a motion to compel arbitration and for a stay pending arbitration pursuant to the FAA. ECF Nos. 25-30. Plaintiff filed its opposition to the motion to compel arbitration on February 21, 2025. ECF No. 35. On March 4, 2025, Defendants and STL Namos filed their reply brief. ECF No. 38.

On July 24, 2025, the Court granted STL Namos' motion to intervene for the purpose of compelling arbitration. ECF No. 42.

## LEGAL STANDARD

Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." Ross v. Am. Express Co., 547 F.3d 137, 142 (2d Cir. 2008) (internal quotation marks and citations omitted).

To determine whether to compel arbitration, courts perform a two-step inquiry that looks at contract principles "governed by state rather than federal law." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003) (per curiam). At step one, the court considers "whether 'the parties enter[ed] into a contractually valid arbitration agreement.'" Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP, No. 22-CV-5212 (JPC) (JEW), 2023 WL 2138693, at *2 (S.D.N.Y. Feb. 21, 2023) (quoting Cap Gemini Ernst & Young, U.S., LLC, 346 F.3d at 365) (alteration in original). At step two, the court first asks, "whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate." Citigroup Inc. v. Sayeg, No. 21-CV-10413 (JPC), 2022 WL 179203, at *5 (S.D.N.Y. Jan. 20, 2022) (internal quotation marks and citations omitted). "[I]f the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Gordon, 2023

3

WL 2138693, at *2 (internal quotation marks omitted) (quoting Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 69 (2019)). If it does not, then the court considers whether "the parties' dispute fall[s] within the scope of the arbitration agreement."[2] Cap Gemini Ernst & Young, U.S., LLC, 346 F.3d at 365.

After the two-step inquiry, the Court examines whether "one party to the agreement has failed, neglected or refused to arbitrate." Beijing Shougang Mining Inv. Co. v. Mongolia, 11 F.4th 144, 162 (2d Cir. 2021) (internal quotation marks and citations omitted). "A party has refused to arbitrate if it commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." Id. (cleaned up). Once a party petitions to compel arbitration, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

"In determining whether to compel arbitration, the Court applies a standard similar to that used at summary judgment and must construe all reasonable inferences in favor of . . . the non-moving party." Palmer v. Starbucks Corp., 735 F. Supp. 3d 407, 415 (S.D.N.Y. 2024); see also Barrows v. Brinker Rest. Corp., 36 F.4th 45, 49 (2d Cir. 2022) ("Because motions to compel

---

[2] The Second Circuit has articulated two additional factors to consider in addressing a motion to compel arbitration, neither of which is at issue here: "whether the plaintiff's federal statutory claims are 'non-arbitrable'"; and "if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." Abdullayeva v. Attending Homecare Servs. LLC, 928 F.3d 218, 221 (2d Cir. 2019). Plaintiff has effectively conceded the arbitrability of its claims in this action by asserting the same claims in the Israeli Arbitration. See ECF No. 27-3 at 45, 48, 51. And claims for violation of Section 10(b) of the Exchange Act and Rule 10b-5 are arbitrable. See Terra Res. I v. Burgin, 674 F. Supp. 1072, 1073 (S.D.N.Y. 1987) (noting that "claims under section 10(b) of the . . . Exchange Act . . . are arbitrable").

arbitration are governed by a standard similar to that applicable for a motion for summary judgment, a court must draw all reasonable inferences in favor of the non-moving party.") (internal quotation marks and citations omitted).

## **DISCUSSION**

Defendants and STL Namos move to compel arbitration. ECF No. 26, 38. Plaintiff, despite having commenced an arbitration against STL Namos based on claims that entirely overlap with the claims in this action, opposes arbitration. ECF No. 35. For the reasons that follow, the motion to compel arbitration is granted.

A. <u>The parties entered into a valid arbitration agreement.</u>

As the parties moving to compel arbitration, Defendants and STL Namos have the initial burden of showing that the parties agreed to arbitrate. <u>Citigroup Inc.</u>, 2022 WL 179203, at *5. They have satisfied that burden here.

Plaintiff does not dispute that it entered into the Partnership Agreement, which contains an arbitration clause. <u>See</u> ECF No. 1 at ¶ 43; ECF No. 35 at 10. Nor does Plaintiff dispute the validity of the Partnership Agreement or the arbitration clause contained within that agreement. <u>See</u> <u>Costa v. Roman Health Ventures, Inc.</u>, No. 21-CV-05180 (PMH), 2021 WL 4991718, at *3 (S.D.N.Y. Oct. 27, 2021) (concluding that where plaintiff did not dispute validity of arbitration agreement, the first step of inquiry was met). And, indeed, Plaintiff is in the midst of an arbitration in Israel pursuant to the arbitration clause in the Partnership Agreement. <u>See</u> ECF No. 27-4 at 3.

B. <u>The arbitration clause encompasses Plaintiff's claims in this suit.</u>

Before assessing whether the dispute at issue comes within the scope of the arbitration clause, "the Court must determine whether it or an arbitrator must decide the issue of

arbitrability." Hong v. Belleville Dev. Grp., LLC, No. 15-CV-5890 (RJS), 2016 WL 4481071, at *2 (S.D.N.Y. Aug. 17, 2016) "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). To show "clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator," parties may point to provisions of an arbitration agreement "explicitly incorporat[ing] procedural rules that empower an arbitrator to decide issues of arbitrability." DDK Hotels, LLC v. Williams-Sonoma, Inc., 6 F.4th 308, 318 (2d Cir. 2021) (internal quotation marks and citations omitted)

  Neither party argues that the arbitration clause evinces an intent to delegate the question of arbitrability to the arbitrator. The arbitration clause does not explicitly state that the arbitrator will decide issues of arbitrability, and nor does the clause incorporate procedural rules that empower the arbitrator to decide such issues. See ECF No. 27-1 at § 14.8.9; see also Gordon, 2023 WL 2138693, at *6 (noting that the incorporation of the AAA Commercial Arbitration Rules would be evidence of an intent to delegate the question of arbitrability to the arbitrator). Instead, the clause allows the arbitration to "be conducted under such procedural rules as determined by the [a]rbitrator." ECF No. 27-1 at § 14.8.9. There thus is no clear and unmistakable evidence that the parties intended for an arbitrator to determine the issue of arbitrability. See Oriental Republic of Uruguay v. Chem. Overseas Hldgs., Inc., No. 05-CV-6151(WHP), 2006 WL 164967, at *5 (S.D.N.Y. Jan. 24, 2006) (noting that there is a presumption "against an arbitrator deciding arbitrability" and a presumption "in favor of judicial resolution"). The Court therefore turns to the issue of arbitrability. See Hong, 2016 WL 4481071,

at *2 (concluding that court should decide issue of arbitrability where no evidence suggested parties intended arbitrator to decide arbitrability).

"Whether an agreement to arbitrate encompasses a particular dispute is a matter of contract interpretation, to be determined in accord with applicable state law." Oriental Republic of Uruguay, 2006 WL 164967, at *5. The Partnership Agreement includes a Delaware choice-of-law provision and, accordingly, Delaware law governs the question of arbitrability. ECF No. 27-1 at § 14.8.4; see also Hong, 2016 WL 4481071, at *2 n.4 (applying Delaware law in determining whether agreement compelled arbitration because agreement contained a choice of law clause).

The arbitration clause in the Partnership Agreement is broad. The clause covers "any dispute arising out of or in connection with this Agreement or any Limited Partner's Subscription Agreement." ECF No. 27-1 at § 14.8.9. Delaware courts have construed similarly worded arbitration clauses broadly. See, e.g., Wildfire Prods., L.P. v. Team Lemieux LLC, 2022 WL 2342335, at *4 (Del. Ch. June 29, 2022) (characterizing an arbitration clause as "broad" when it covered "any dispute relating to or arising out of certain subject matter") (internal quotation marks omitted); DeLucca v. KKAT Mgmt., 2006 WL 224058, at *10 (Del. Ch. Jan. 23, 2006) (classifying "arising out of, connecting with or simply relating to" as "terms often used by lawyers when they wish to capture the broadest possible universe"); The Town of Smyrna v. Kent Cnty. Levy Ct., 2004 WL 2671745, at *2 (Del. Ch. Nov. 9, 2004) (noting that arbitration clause was broad because it covered all claims "arising out of" or "related to" the agreement). Indeed, the Delaware Supreme Court has held that an arbitration clause using the same phrase as the clause here ("arising out of or in connection with") "signaled an intent to arbitrate all possible claims that touch on the rights set forth in [the parties'] contract." Parfi Hldg. AB v. Mirror

7

Image Internet, Inc., 817 A.2d 149, 155 (Del. 2002). And under Delaware law, if the arbitration clause is broad, then "any issues that touch on contract rights or contract performance" are issues for arbitration. Id.

Plaintiff's claims here touch on the contract rights of the parties in the Partnership and Subscription Agreements. By contributing funds, Plaintiff became a limited partner bound by the Partnership Agreement. See ECF No. 27-1 at § 3.3.2. And Plaintiff alleges that those funds were obtained by Defendants through false statements. See, e.g., ECF No. 1 at ¶¶ 70-78. The investment loss claimed by Plaintiff is thus premised on the Partnership and Subscription Agreements and Plaintiff's allegation that Hanaco engaged in wrongful conduct in soliciting Plaintiff's investment which is memorialized in those agreements. See id. at ¶¶ 19, 39, 43, 54-56, 71-72, 78-79. Indeed, the relief Plaintiff seeks here would not exist but for Plaintiff's execution of the Partnership and Subscription Agreements. Id. at ¶¶ 19, 40-43 (alleging that it entered into the Partnership and Subscription Agreements in connection with its investment in Vesttoo, Ltd.). The alleged misconduct therefore arises out of or in connection with the Partnership and Subscription Agreements.

Additionally, Plaintiff alleges that Defendants committed securities fraud in connection with their solicitation of the Series 11 investment. The Subscription Agreement contains a representations and warranties clause, which states that the subscriber "has neither received, nor is entitled to rely upon, any representations, warranties, acknowledgements or agreements of or from the Partnership, the General Partner, or any constituent partner, member, officer, [or] employee." ECF No. 27-2 at 18. Plaintiff further agreed that it had "completed to its full satisfaction all investigation, diligence, analysis and consultation with its expert advisors" and is "not relying on the Partnership . . . for legal, accounting, investment or tax advice." Id. at 19; see

8

also id. at 18; ECF No. 27-1 at § 14.8.10. As Defendants indicate (ECF No. 26 at 15), they will rely on these contractual provisions to argue that their conduct was not wrongful. See Douzinas v. Am. Bureau of Shipping, Inc., 888 A.2d 1146, 1151-52 (Del. Ch. 2006) (concluding that claims came within scope of arbitration clause because the agreement "contain[ed] an exculpatory provision limiting the liability of [one of the defendants]" and defendants "ha[d] the right to rely upon these and other provisions of the [relevant agreement] in defending the claims against them"). And, tellingly, Plaintiff itself commenced an arbitration asserting the same claims based on the same subject matter as it asserts in this action. See ECF No. 27-3. In short, the arbitration clause in the Partnership Agreement is sufficiently broad to cover the claims at issue in this litigation.

Plaintiff contends that its claims concern pre-investment misstatements and misrepresentations and therefore can be determined without any reference to the Partnership and Subscription Agreements. ECF No. 35 at 13-14. Plaintiff's argument is unavailing.[3] Plaintiff's claims cannot be resolved without determining the applicability of the exculpatory clauses in the relevant agreements because Defendants will rely on those exculpatory rights in their defense. See Douzinas, 888 A.2d at 1151-52 (arbitration clause was "clearly implicated" by the claims in the case where agreement "contain[ed] an exculpatory provision" limiting liability); see also Karish v. SI Int'l, Inc., 2002 WL 1402303, at *4 (Del. Ch. June 24, 2002) (compelling arbitration

---

[3] To the extent Plaintiff relies on the timing of the alleged misstatements vis-à-vis the execution of the relevant agreements, Delaware courts apply broad arbitration clauses, like the one here, to claims based on pre-contractual conduct when such conduct relates to the formation of the contract containing the arbitration clause, as is the case here. See, e.g., Matria Healthcare, Inc. v. Coral SR LLC, 2007 WL 763303, at *6 (Del. Ch. Mar. 1, 2007) (explaining that "[t]he question of whether a misrepresentation occurred and whether that misrepresentation was material are questions typically submitted to arbitration"); see also S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 195 (2d Cir. 1984) ("Unless excluded, claims of fraud in the inducement of a contract are arbitrable.").

and noting that courts have compelled arbitration "for claims of fraudulent inducement when the contract's arbitration clause specifically referred to issues 'aris[ing] under' the contract").

Moreover, STL Namos sought intervention in part because "[t]he exculpatory clauses and disclaimers of reliance" in the Partnership and Subscription Agreements "will be central to this action." ECF No. 22 at 15-16. And STL Namos was granted intervention. ECF No. 42. For this reason, Plaintiff cannot avoid arbitration by claiming that Defendants are non-signatories to the relevant agreements. ECF No. 35 at 15.

In short, Plaintiff's claims, which it also asserted in the Israeli arbitration, are encompassed by the broad arbitration provision in the Partnership Agreement. Additionally, Plaintiff, by commencing this action, has refused to arbitrate. See Gordon, 2023 WL 2138693, at *9 (concluding that party that commenced litigation in federal court had refused to arbitrate). Accordingly, because each requirement is satisfied, the motion to compel arbitration is granted and Plaintiff is hereby ordered to participate in arbitration.

C. The case is stayed pending arbitration.

Under the FAA, the court must issue a stay if one is requested or, if a stay is not requested, the court has "discretion to dismiss the case or issue a stay." Lewis v. ANSYS, Inc., No. 19-CV-10427 (AJN), 2021 WL 1199072, at *9 (S.D.N.Y. Mar. 30, 2021). "[W]hen all of the claims in an action have been referred to arbitration and a stay requested," the FAA "mandate[s] a stay of proceedings." Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015).

Defendants have asked for a stay. ECF No. 26 at 19-20; ECF No. 38 at 13-14. Plaintiff opposes a stay but has not requested dismissal of the case. ECF No. 35 at 24-25. Given the request for a stay, the case is stayed pending arbitration.[4]

---

[4] Plaintiff asks that it be allowed to engage in limited discovery in aid of the Israeli arbitration. ECF No. 35 at 20-21. The Court previously ruled on this motion, concluding that Plaintiff had not demonstrated the "extraordinary circumstances" required to grant discovery in aid of arbitration. ECF No. 34. Moreover, because the Court is granting Defendant's motion to compel arbitration and staying this proceeding, decisions concerning discovery should be made by the arbitrator. See Turner v. CBS Broad. Inc., 599 F. Supp. 3d 187, 191 (S.D.N.Y. 2022) (noting that "discovery and evidentiary issues that arise in the context of a pending arbitration proceeding are committed to the discretion of the arbitrator, at least in the first instance").

## **CONCLUSION**

For the foregoing reasons, Defendants' and STL Namos' motion to compel arbitration is **GRANTED**. This case is **STAYED** pending the outcome of the arbitration. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 25.

DATED:   New York, New York
         August 25, 2025

SO ORDERED

_____
VALERIE FIGUEREDO
United States Magistrate Judge